UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RACHEL M. TERI and DANIEL WATKINS, on
behalf of themselves and all other similarly situated
current and former employees, as Class
Representatives,

                                                       **REPORT AND
RECOMMENDATION**
                       Plaintiffs,             CV 05-2777 (DRH) (WDW)

        -against-

OXFORD MANAGEMENT SERVICES, INC., a
New York corporation, RICHARD A. PINTO,
Chairman of the Board of Oxford Management
Services, Inc., CHARLES HARRIS, Board Member
and Executive Vice President of Oxford Management
Services, Inc., PATRICK R. PINTO, Vice Chairman
of the Board of Oxford Management Services, Inc.,
PETER C. PINTO, President of Oxford Management
Services, Inc., JOHN P. FIUMANO, Chief Operating
Officer of Oxford Management Services, Inc.,
SALVATORE SPINELLI, SALVATORE SPINELLI
LAW OFFICE,

                            Defendants.
------------------------------------------------------------------X
**WILLIAM D. WALL, United States Magistrate Judge:**

      Before the court is plaintiffs' motion seeking sanctions against defendants pursuant to Rule 37 of the Federal Rules of Civil Procedure. Motion, Docket Entry ("DE") [58].[1] Defendants oppose the motion. For the reasons set forth herein, the court finds that the motion should be granted. However, since the relief sought is dispositive of the case, the undersigned's findings are set forth in a report and recommendation to District Judge Hurley that the motion be granted, that defendants' answer be stricken, and that a default judgment be entered.

---

[1]Papers submitted by plaintiffs in support of this motion also include plaintiffs' attorneys' fee application in connection with the court's March 9, 2007 order sanctioning defendants and awarding such fees. The undersigned has issued a separate order concerning this award.

## BACKGROUND

Plaintiffs Rachel M. Teri and Daniel Watkins ("plaintiffs"), on behalf of themselves and on behalf of a class of individuals, commenced this action against Oxford Management Services, Inc. ("Oxford") and Oxford's officers alleging violations of the Fair Labor Standards Act and New York labor laws regarding overtime pay. By Memorandum and Order dated September 17, 2007, Judge Hurley granted plaintiffs' motion to add Salvatore Spinelli, Oxford's General Counsel, as an individual defendant. Plaintiffs seek unpaid overtime wages, as well as liquidated damages and attorneys' fees. Am. Compl. ¶2, DE [72].

This is the latest in a series of plaintiffs' motions alleging that defendants have purposely delayed and obstructed discovery. Plaintiffs argue that despite court orders compelling production of various discovery materials, defendants have still not satisfied their discovery obligations. A review of the papers currently before the court reveals a pattern not unfamiliar in this litigation – defendants fail to produce materials, plaintiffs move for relief before the court, and defendants respond by providing some, but not all, of the outstanding discovery. In light of the drastic sanctions sought by plaintiffs, the court will review the history of the motion practice to date.

According to plaintiffs, document demands and requests for interrogatories were first served on January 30, 2006, and, when defendants' counsel indicated he hadn't received those demands, re-served on April 27, 2006. *See* Park ltr of 7/27/06, DE [24]. The document demands requested, *inter alia*, that defendants produce all personnel records, payroll records including W-4 forms and pay stubs, time records, and commission and/or bonus records for all persons performing collections work from June 9, 1999 forward. Pls' Req. for Docs., Park ltr, Ex. A, DE

[24-2]. According to plaintiffs, defendants responses, served on June 22, 2006, "failed to include a single time sheet, payroll record or paycheck stub." Park ltr of 7/27/06, p 2. Defendants' response to plaintiffs' interrogatory number 1 also contained defendants' assertion that payroll records prior to January 1, 2002 "cannot be located after a diligent search." Defs' Resp. to Pl's First Set of Interrogatories, Resp. No. 1, DE [24-4]. The court notes that this is the first of several representations made by defendants regarding the diligence or thoroughness of their search for responsive materials.

First Motion to Compel

Plaintiffs first moved to compel production of various personnel, payroll and timekeeping records by letter application dated July 27, 2006. *See* Park ltr of 7/27/06, DE [24]. In an opposition letter dated August 3, 2006, defendants did not dispute that they had not produced the requested materials, but indicated that additional materials would be produced that day. *See* Poli ltr of 8/3/06, p. 2, DE [26]. Defendants further stated that they had informed plaintiffs' counsel "that all of the employee payroll records are available to her for inspection as of Friday, August 4, 2006." *Id.* In addition, defendants noted that the amount due to plaintiffs "is less than $10,000.00" and that "it is hard to envision how a federal class action is a 'superior' method of resolving these overtime pay claims, when New York's labor laws provide an efficient cost free remedy to these same individual New York claimants." *Id.*

After oral argument, the undersigned granted plaintiffs' motion to compel in part and ordered defendants to produce, by September 15, 2006, "all payroll records, including time sheets, punch cards and pay stubs for every New York collector employed between June 9, 1999 to date." Order of 8/24/06, DE [29]. At that time, the court denied plaintiffs' request to compel

3

production of personnel records of collectors employed prior to January 1, 2002, and denied their request for sworn statements regarding the extent of defendants' diligent search and circumstances leading to the alleged loss of relevant documents. *Id.*[2]

Second Motion to Compel

Even before the court issued its formal ruling on the first motion to compel, plaintiffs filed a second motion to compel arising from defendants' failure to make materials available for plaintiffs' inspection. *See* Park ltr of 8/21/06, DE [28]. Based on defendants' representation that all payroll records would be available for plaintiffs' inspection after August 4, 2006, Ms. Park traveled to defendants' offices by appointment on August 17, 2006 to conduct that inspection. Plaintiffs' second motion to compel concerned the inadequacy of the materials made available to plaintiffs' counsel at that inspection. Defendants failed to submit opposition to this motion, and it was granted, both as unopposed and on the merits, by order dated September 1, 2006. Order of 9/1/06, DE [30]. In that order, the court directed production of the materials listed as items A through G in plaintiffs' motion:

> A. 2004, 2005 and 2006 payroll registers;
>
> B. Timesheets and/or punch card details from June 9, 1999 to date (except select records representative and opt-in plaintiffs);
>
> C. Commissions and bonus payments and calculations for collectors from June 9, 1999 to date;
>
> D. Personnel files of collectors between June 9, 1999 to date;
>
> E. Collectors' pay stubs and earnings statements between June 9, 1999 to date;

---

[2]Defendants have not sought reconsideration of any of the discovery orders issued by the undersigned, nor have they appealed any of those orders.

> F. Complete Forms W-2 for tax years 1999, 2000, 2001, and 2005, and
>
> G. in the absence of any payroll records prior to January 1, 2002, general ledgers, check ledgers, tax returns and filings, unemployment insurance and workers' compensation statements containing information identifying OMS collectors between June 9, 1999 to December 31, 2001.

The order directed that "[d]efendants shall provide plaintiffs' counsel an opportunity to review these documents by September 15, 2006." Order of 9/1/06.

On September 14, 2006, plaintiffs' counsel Jean Park traveled to defendants' offices to review documents.[3] According to plaintiffs, defendants again failed to provide many of the documents that the court had ordered produced. A status conference was held before the undersigned on September 22, 2006. At that time, plaintiffs' requested, and were granted, permission to make a motion to compel and for sanctions pursuant to Rule 37. Order of 9/22/06, DE [31].

Third Motion to Compel

On October 6, 2006, plaintiffs made their third motion to compel production and for sanctions for defendants' failure to comply with the court's orders of August 24 and September 1, 2006. DE [35]. Specifically, plaintiffs claimed that at the September 14, 2006 inspection, defendants complied only to the extent of providing the documents identified in category A (payroll registers) and some of those identified in category B (punch cards only, and limited to year 2005 and part of 2006). *See* Park Aff. of 10/6/06, ¶62, DE [35-2]. Defendants failed to

---

[3]The parties have different interpretations about various things that were said or done during Ms. Park's visit to defendants' offices on September 14, 2006. The court has not made a determination as to who's version is more truthful, but rather has focused upon whether or not documents that were the subject of the undersigned's order were, in fact, produced for inspection.

produce any of the documents identified in categories C through G, no time sheets, and no punch cards for the remaining years identified in category B. *Id.* ¶¶61, 63.

In opposition to the motion, defendants submitted an affidavit from its general counsel, Salvatore Spinelli, that presented defendants' position on their production. *See* Spinelli Aff. of 10/18/06, DE [37-8]. According to Mr. Spinelli, defendants provided all documents identified in categories A (payroll records), B (all timesheets), and F ("All AVAILABLE W-2s have been given to Ms. Park"). *Id.* ¶6. He further claimed that pay stubs and earnings statements are in the possession of the employees, not defendants, and that "[a]ny payroll records prior to October 2001 do not exist." *Id.* Mr. Spinelli later confused this statement to a degree when he claimed that manually prepared payroll records prior to October 2001 "are still not to be found" thus suggesting that those records did still exist. *Id.* ¶9.

As to the personnel records, Mr. Spinelli claimed that he "exhibited a personnel file to Ms. Park," that those files do not contain payroll information, and that other information contained in those files "in my opinion, are not relevant to a payroll dispute" and could not be released without a confidentiality agreement. *Id.* ¶6. Mr. Spinelli also indicated that "some personnel files are in storage and the remaining files are locked in a large file cabinet in the office of Charles Harris." *Id.* ¶7. Despite the court's September 1, 2006 order directing defendants to provide documents, including personnel files, for plaintiffs' inspection, Mr. Spinelli takes the position that "[i]f Ms. Park had . . . told me she wanted to view personnel files instead of reviewing payroll records, I would have removed the large file cabinet to her work area." *Id.* ¶8.

In addition to the affidavit from Mr. Spinelli, defendants submitted a memorandum of law in opposition to plaintiffs' motion. Defs' Mem. in Opp., DE [41]. In that memorandum,

6

defendants took the position that any potential "claims for unpaid overtime accruing <u>before</u> June 9, 2002 are time-barred under the plaintiffs best case scenario." *Id.* p. 7 (emphasis in original). Defendants also put forth an argument that since the New York Commissioner of Labor was already conducting an audit of unpaid overtime wages, that would ensure that any "meritorious claim will be collected and paid to any qualified employee on an expedited basis undiluted by attorney fees and costs incurred in any unnecessary and protracted litigation." *Id.* p. 9. Defendants concluded that since the audit was underway "it is difficult to conceive . . . that a class action is superior to the complete administrative remedy afforded to these employees." *Id.*

After briefing and oral argument, plaintiffs' third motion to compel was also granted by order and by rulings made on the record at the oral argument. *See* Order of 3/9/07, DE [51]; Transcript DE [54]. Finding defendants' arguments, at best, disingenuous, the court granted plaintiffs' motion in its entirety, and ordered defendants to produce copies, at their expense and within thirty days, of all the records demanded by plaintiffs' and previously ordered produced by the court. *See* Tr. 6:20-25. The court further awarded sanctions in the form of "attorney's fees and costs in connection with all three motions that they had to make and the cost of their two inspections, which were totally inadequate." Tr. 7:11-13.

<u>Events Since Issuance of the Third Order to Compel</u>

Since the March 9th Order required defendants to produce responsive documents within thirty days, the last day for timely production was April 9, 2007. According to correspondence attached to this motion, defendants produced three boxes of materials on April 4, 2007, after which Ms. Park wrote a letter to defendants' counsel John Poli detailing the perceived deficiencies of that production. Ltr of 4/6/07, Park Aff., Ex. B, DE [59]. Having received no

7

response to this letter, Ms. Park advised the court on April 9, 2007 that defendants failed to comply with the March 9th order and sought permission to make a motion to strike defendants' answer. *See* Park ltr of 4/9/07, DE [53]. Defendants have not attempted to explain why the first production on April 4th, while timely, was deficient.

On April 12, 2007, defendants untimely produced four additional boxes and six e-mails that attached additional records. Park Aff, ¶¶17-19. Despite the court's direction that the defendants provide copies of responsive documents at their expense for production, the additional boxes contained original records and the e-mails had to printed by plaintiffs at their expense. Plaintiffs reviewed the materials produced on April 12th and again determined that the production was incomplete. Park Aff, ¶¶20-22. On April 19, 2007, Ms. Park again wrote Mr. Poli to advise him the remaining deficiencies in the production. Ltr of 4/19/07, Park Aff., Ex. D.

On April 20, 2007, Mr. Poli submitted a letter to the court in opposition to plaintiffs' April 9th request for permission to move to strike defendants' answer, claiming that defendants "have diligently and in good faith attempted to comply with the plaintiffs' voluminous document requests." *See* Ltr of 4/20/07, DE [55].[4] Mr. Poli's submission also attached a letter to the court dated April 12, 2007 from Mr. Spinelli in response to plaintiffs' April 9th application. In that letter, Mr. Spinelli claims that thousands of pages have been produced and that various items could not be located. Mr. Spinelli also provided affidavits dated April 3 and April 11, 2007 regarding the search for various materials and concluded that "I have exhausted all reasonable

---

[4]Despite counsel's reference to the demands as "voluminous," defendants were aware of the scope of the demands for almost a year and had been subject to an order compelling production for over six months. Moreover, to the extent they may have required more time for some unknown reason, defendants never requested an extension of time to respond to the court's order to produce the materials within thirty days, or by April 9, 2007.

8

methods of locating the files and in my opinion they cannot be located." Spinelli Aff. 4/11/07, ¶8. The court granted plaintiffs' April 9th motion for permission to move to strike defendants' answer and for additional sanctions, *see* Elec. Order of 5/11/07, resulting in submission of the motion currently under consideration.

In addition to the delay in receiving production of materials directly from defendants, plaintiffs also claim that defendants' counsel, John Poli, interfered with a Rule 45 subpoena dated April 23, 2007 and served on non-party RSM McGladrey, Oxford's outside accountants. *See* Park Aff., ¶¶30-34. Plaintiffs have provided a letter dated May 8, 2007 from John Poli to Pat LaMarco, Sr. at RSM McGladrey. *See* Poli Ltr of 5/8/07, Park Aff. Ex. H. That letter references telephone communications between Poli and LaMarco regarding the subpoena, discusses Oxford's lack of objection to production of some of the materials, and states its "objection" to RSM McGladrey's production of various materials on the grounds of "relevance and necessity," "confidentiality," and "overbreadth." Defendants did not seek an order quashing the subpoena. By letter dated May 9, 2007, RSM McGladrey complied with part of the subpoena, advised plaintiffs that they were not in possession of some records, and apparently withheld some items because of Oxford's objections. LaMarco ltr of 5/9/07, Park Aff. Ex I. Although plaintiffs contend that RSM McGladrey did not comply with part of the subpoena at the instruction of Mr. Poli, they do not appear to seek any specific relief regarding this conduct but apparently provide it as another instance of defendants' alleged bad faith in this litigation.

**DISCUSSION**

Rule 37 provides a range of sanctions for failure to comply with a court order including, *inter alia,* the striking of pleadings and the rendering of a default judgment. Fed. R. Civ. P. 37

(b)(2)(A)(iii) & (vi).  Simply put, "discovery orders are meant to be followed" and failure to do so may result in a dispositive sanction.  *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995).  Rule 37 sanctions have three objectives : to "ensure that a party will not benefit from its own failure to comply," to serve as a specific deterrent to obtain compliance with a specific order, and to "serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault."  *Update Art, Inc. v. Modiin Publ'g, Ltd.,* 843 F.2d 67, 71 (2d Cir. 1988).  The decision of whether to impose sanctions is left to the sound discretion of the court.  *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642 (1976)(per curiam).

**I.  Motion to Strike Defendants' Answer**

When deciding the appropriate sanction, the court should "consider a variety of factors, including: '(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party had been warned of the consequences of his noncompliance.'" *Perez v. Siragusa,* 2008 WL 2704402, at *4 (E.D.N.Y. July 3, 2008)(quoting *Richardson v. New York City Health and Hosp. Corp.,* 2007 WL 2597639, at *6 (S.D.N.Y. Aug. 31, 2007)).  No particular factor is dispositive, and "sanctions must be weighed in light of the full record in the case." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062,1068 (citing *National Hockey League*, 427 U.S. at 642).  The Second Circuit has further indicated that "in this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where . . . they are clearly warranted." *Cine Forty-Second St. Theatre,* 602 F.2d at 1068.  The court will now examine these factors in turn.

1. Willfullness or Reason for Noncompliance

Of the possible sanctions, striking of the pleadings is one of the most extreme and as such, "is appropriate 'only where the noncompliance is due to willfulness, bad faith, fault or gross negligence rather than inability to comply or mere oversight." *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (quoting *Hochberg v. Howlett,* 1994 WL 174337, *3 (S.D.N.Y. May 3, 1994)(citations omitted)), *aff'd*, 93 Fed. Appx 328 (2d Cir. 2004). "Non-compliance with discovery orders will be deemed willful 'when the court's orders have been clear, when the party has understood them and when the party's noncompliance is not due to factors beyond the party's control.'" *Perez,* 2008 WL 2704402, at *4 (quoting *Burgie v. Euro Brokers, Inc.,* 2006 WL 845400, at *12 (E.D.N.Y. Mar. 30, 2006)(citations omitted)).

Defendants' counsel concedes that "plaintiffs' criticism of defendants' sloppy record keeping and resulting piecemeal retrieval of same [sic] of its old payroll and personnel documents during the course of this litigation, is well-deserved." Poli Aff. n.2, DE [62]. The court finds, however, that defendants' "piecemeal" approach to discovery goes well beyond sloppy record keeping and constitutes, even in its best light, gross negligence. Defendants have never suggested that the court's directives were in anyway unclear to them, yet despite these clear orders from the court, they have continuously failed to produce materials. Even their limited attempts to comply were frequently colored by obstructive behavior. For example, defendants claim that they would have made personnel records available to plaintiffs' counsel on September 14, 2006, if only she had advised them that she wished to review such documents. Plaintiffs' counsel, however, was under no obligation to "ask" for the documents as the defendants were

11

required to produce them pursuant to the court's September 1, 2006 Order.[5]

Defendants' piecemeal approach has continued through the briefing of the current motion. In an affidavit dated July 27, 2007 submitted in opposition to this motion, Mr. Spinelli states that "[a]ll items requested by Plaintiffs' attorneys have been provided or addressed in the affidavits of Charles Harris and Richard Galeota." Spinelli Aff. ¶20, DE [63]. Attached as Exhibits AA, BB, and CC to the Spinelli Affidavit are copies of plaintiffs' charts of the production deficiencies with annotations as to the status of defendants' production. All items are either marked as produced, or direct the reader to the affidavits of Harris and/or Galeota. The affidavits provide more detail about procedures at Oxford, indicate that all documents in defendants' possession have been produced, and conclude that any outstanding materials are "lost." *See* Galeota Aff. ¶11; Harris Aff. ¶9, DE [63]. Plaintiffs continue to assert that defendants have not produced all responsive documents in their possession or control. *See* Pls' Reply Mem., DE [67]. Even after these assertions, however, defendants produced limited materials as late as August 2007.

Defendants' most recent attempts to comply, even if those responses could be deemed complete, do not excuse them from the consequences of their prior behavior. *See Handwerker,* 211 F.R.D. at 211 (stating that a party's "belated production of discovery that may or may not be complete does not save" prior conduct from sanction). As the Second Circuit has noted "'[i]f parties are allowed to flout their obligations, choosing to wait to make a response until a trial

---

[5]Defendants also belatedly raised the need for a confidentiality order as a reason for not producing personnel records as ordered by the court. Although a confidentiality order might well have been appropriate, defendants did not mention it until after the order compelling production was entered, and did nothing to further the preparation and execution of such an order.

court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules.'" *Cine Forty-Second St. Theatre,* 602 F.2d at 1068 (quoting *Dellums v. Powell,* 566 F.2d 231, 235-36 (D.C. Cir. 1977)). In order to deter similar conduct on the part of future litigants, defendants' strategy of delay and partial compliance, in disregard for the rules of discovery, cannot be countenanced by the court.

Defendants have also claimed that numerous documents are "lost." While parties obviously cannot produce materials they do not have, the court views defendants' current claims regarding the breadth of their search for those documents with a degree of skepticism. While defendants have consistently claimed to have conducted diligent and thorough searches, their purported diligence is belied by the continued piecemeal production of materials after asserting the thoroughness of their searches. For example, their response to plaintiffs' interrogatory number 1 that payroll records prior to January 1, 2002 "cannot be located after a diligent search," DE [24-4], was followed shortly by production of payroll records for the last quarter of 2001. More recently, Mr. Spinelli's statement that "I have exhausted all reasonable methods of locating the files and in my opinion they cannot be located," Spinelli Aff. of 4/11/07, ¶8, was followed by production of additional materials in August 2007.

Although defendants clearly have a continuing obligation to produce newly discovered materials, the pattern of submitting affidavits claiming that all avenues have been exhausted, followed in short order by production of newly discovered materials, is further evidence of defendants' cavalier attitude towards their discovery obligations in this matter. If defendants had taken their obligations seriously in the first instance and conducted a thorough search at the outset, the issue of lost materials could have been addressed long ago.

In addition to the various actions, and inactions, of defendants, some of the arguments they have presented to the court further support a finding of willfulness and/or gross negligence. From arguments presented in their memoranda, it is apparent that they have unilaterally determined that pre-June 2002 records of employees are not relevant since any claims from those employees should be time-barred. *See* Defs' Mem, p 7, DE [41]. Rather than appeal the undersigned's orders compelling production of materials, or making a motion asking the court to make a determination on any statute of limitations defense, defendants simply interpreted the order in the manner they deemed appropriate and ignored the court's directives.

Defendants' have also suggested that the case is not worth much money and should be settled without discovery. In a August 2006 letter to the court, defendants' counsel stated that the aggregate sum due plaintiffs was "less than $10,000.00" and that "this case is well-suited for mediation and ripe for settlement discussions." Poli ltr. of 8/3/06, p. 2, DE [26]. They have also consistently suggested that the case is better resolved without resort to a federal class action litigation. Again as early as August 2006, defendants' counsel stated that "it is hard to envision how a federal class action is a 'superior' method of resolving these overtime pay claims, when New York's labor laws provide an efficient cost free remedy to these same individual New York claimants." Poli ltr. of 8/3/06, p. 2, DE [26]. While these positions may reflect a defense strategy of not expending resources on this case, neither position excuses defendants' grossly negligent behavior in regard to their discovery obligations. "Defendants rolled the dice on the [] court's tolerance for deliberate obstruction, and they lost." *Bambu Sales,* 58 F.3d at 853.

In addition to defendants' continuing failure to meet their discovery obligations, plaintiffs claim that defendants' counsel John Poli wrongfully interfered with their subpoena served upon

14

non-party RSM McGladrey. Plaintiffs have provided a letter from Mr. Poli to Mr. LaMarco at RSM McGladrey that appears to confirm conversations between the two regarding plaintiffs' subpoena and in which Mr. Poli approves RSM McGladrey's compliance as to some of the materials while stating Oxford's "objections" to production of other items. Apparently, defendants' "objections" were successful since RSM McGladrey did not respond to those portions of the subpoena to which defendants objected. If defendants had proper objections to materials sought, their proper course should have been a motion to quash the subpoena. The action they did take, viewed in the context of their other discovery conduct, further supports the court's conclusion that defendants' actions were willful or, at best, grossly negligent. Defense counsel's cursory reference to Rule 45 aside, the clear purpose of the letter was to prevent RSM McGladrey from complying with the subpoena. The "objections" posed by defendants' counsel constitute further evidence of a pattern of delay and obfuscation employed by defendants throughout this case.

In sum, while the acts of defendants, viewed individually, might be excused as simple acts of negligence, examination of their actions as a whole warrants a different conclusion. Consideration of defendants' actions throughout discovery – their piecemeal production of materials only after motion practice, their frequent declarations of diligence followed by production of more responsive materials, their obstructive conduct of not making specific materials available for review in violation of a court order, their late insistence on a confidentiality order as a condition for production, their suggestions that they need not produce court-ordered materials because of a possible statute of limitations defense or that the matter need not be resolved in federal court, their 'objections' directed to the recipient of a non-party

15

subpoena – leads the court to a finding that their behavior has been, at the very least, grossly negligent.

    2. Efficacy of lesser sanctions

The court has not only *considered* imposing lesser sanctions to secure defendants' compliance with discovery, it actually *imposed* monetary sanctions. Yet despite three orders directing compliance and the imposition of monetary sanctions, defendants continue to delay and obstruct. The fact that defendants continued their behavior even after monetary sanctions were imposed "demonstrates that monetary sanctions will not be effective in deterring [defendants] from future non-compliance." *Perez,* 2008 WL 2704402, at *6. Where prior orders of the court and the imposition of lesser sanctions do not accomplish their purpose, striking of the answer may be an appropriate sanction. *See Burns v. Imagine Films Entertainment, Inc.,* 198 F.R.D. 593 (W.D.N.Y. 2000); *see also Momchilov v. Chaduhry,* 2006 WL 2443669, at *2 (E.D.N.Y. Aug. 22, 2006)(dismissing complaint after monetary sanctions were ineffective).

The court has also considered other lesser sanctions short of a recommendation to strike the answer. The documents still not produced include time keeping records that represent the very heart of plaintiffs' case for unpaid overtime wages. As such, an order precluding defendants from producing those materials at a later date would enure to the benefit of defendants, not plaintiffs. Moreover, since the documents sought "relate to damages, the distinction between preclusion and dismissal is negligible." *Perez,* 2008 WL 2704402, at *6. Since lesser sanctions would neither remedy defendants' noncompliance nor discourage additional misbehavior, the court believes an order striking defendants' answer is the appropriate sanction.

3. Prejudice to Plaintiffs

The court finds that the plaintiffs have been prejudiced by defendants' conduct as they have been forced "to devote extensive time and resources to trying to obtain the most basic discovery and the case has been delayed." *American Cash Card Corp. v. AT & T Corp.*, 184 F.R.D. 521, 525 (S.D.N.Y. 1999). Moreover, they have been further prejudiced since defendants have successfully thwarted their attempt to identify other potential class members. Although defendants apparently believe that plaintiffs should be barred from such an inquiry because of possible statute of limitations issues or interpretations of New York labor law, this belief does not excuse their failure to comply with direct orders of the court. The court finds that this factor also favors an order striking defendants' answer.

4. Duration of the offending conduct

As the background provided *supra* clearly indicates, defendants' failure to comply with the court's directive regarding discovery of various time records and personnel files has endured through three motions and two on-site document inspections. Conferences before the undersigned have been held, and monetary sanctions imposed, to no avail. The court finds that the duration of defendants' offending conduct also weighs in favor of an order striking their answer.

5. Notice

The court has entertained four motions on the subject of this discovery and has held conferences at which oral argument was heard. Significantly, plaintiffs made the instant motion to strike defendants' answer only after requesting and receiving permission from the undersigned. Defendants cannot seriously argue that they did not realize that plaintiffs motion could be

17

granted. Even with the motion pending, defendants only partially complied with the previous orders to produce. In light of these proceedings, the court finds that defendants had adequate notice that their answer could be stricken as a sanction for their conduct.

For the reasons set forth above, the undersigned finds that all the factors support a determination that plaintiffs' motion should be granted. Accordingly, the court recommends that defendants' answer be stricken and a default judgment entered.

## II.  Additional sanctions

Plaintiffs also seek reimbursement for copying charges related to defendants' production of documents in April 2007. As plaintiffs correctly note, the court explicitly directed defendants to produce copies at their expense. *See* Tr. 6:22-23. If the case were moving forward, plaintiffs would clearly be entitled to reimbursement. However, in light of the court's recommendation that the defendants' answer be stricken, the court declines to order defendants to reimburse plaintiffs for their copying costs.

## OBJECTIONS

A copy of this Report and Recommendation is being sent to counsel for all parties by electronic filing. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of the filing date of this order. Failure to file objections within this period waives the right to appeal the District

Court's Order. *See* 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
September 30, 2008

    /s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge