UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

RACHEL M. TERI and DANIEL WATKINS, on behalf of themselves and all other similarly situated current and former employees as Class Representatives,

                Plaintiffs,
  -v.-

OXFORD MANAGEMENT SERVICES, INC., a New York corporation, RICHARD A. PINTO, Chairman of the Board of Oxford Management Services, Inc., CHARLES HARRIS, Board Member and Executive Vice President of Oxford Management Services, Inc., PATRICK R. PINTO, Vice Chairman of the Board of Oxford Management Services, Inc., PETER C. PINTO, President of Oxford Management Services, Inc., JOHN P. FIUMANO, Chief Operating Officer of Oxford Management Services, Inc., SALVATORE SPINELLI, SALVATORE SPINELLI LAW OFFICE,

                Defendants.
_____

**MEMORANDUM AND ORDER**
05 CV 2777 (DRH)(WDW)

**APPEARANCES:**

**For the Plaintiffs:**
**KELLEY DRYE & WARREN LLP**
101 Park Avenue
New York, New York 10178
By:  Jean Y. Park, Esq.
     John E. Kiley, Esq.

**For the Defendants:**
**JOHN G. POLI, III, P.C.**
200 Laurel Avenue
P.O. Box 59
Northport, New York 11768
By:  John G. Poli, III, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Rachel M. Teri and Daniel Watkins ("plaintiffs"), on behalf of themselves and on behalf of a class of individuals, commenced this action against Oxford Management Services, Inc. ("OMS") as well as Richard A. Pinto, Charles Harris, Patrick R. Pinto, Peter C. Pinto, and John P. Fiumano, who were officers of OMS (collectively, the "Oxford defendants"), seeking to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act and New York labor laws. By Memorandum & Order dated September 18, 2007, the Court granted plaintiffs' motion to amend the Complaint to add Salvatore Spinelli and Salvatore Spinelli Law Office (collectively, the "Spinelli defendants") as defendants.

Presently before the Court is plaintiffs' motion, made pursuant to Local Civil Rule 54.2, seeking an Order requiring the Oxford defendants to post a security bond for costs in an amount of not less than $250,000. For the reasons set forth below, plaintiffs' motion is denied.

## BACKGROUND

OMS is a New York corporation located in Melville, New York and is in the business of providing collections and accounts receivable services. Plaintiffs are former collections agents of OMS who regularly worked more than 40 hours per week but were allegedly not paid overtime wages. The Complaint seeks to recover plaintiffs' unpaid overtime compensation pursuant to the Fair Labor Standards Act and New York state law.

As discovery progressed, plaintiffs made three motions to compel the production of various documents. Magistrate Judge William D. Wall granted the first motion in part on August 24, 2006, and granted the latter two motions in their entirety on September 1, 2006, and March 9, 2007, respectively. (*See* Docket Nos. 29, 30, & 51.) Judge Wall's March 9, 2007 Order also

awarded sanctions to plaintiffs in the form of "attorney's fees and costs in connection with all three motions that [plaintiffs] had to make." (Tr. of Mar. 9, 2007 Bench Decision, Docket No. 54 at 7.)

After the Oxford defendants failed to comply with Judge Wall's March 9, 2007 Order by, *inter alia*, failing to pay plaintiffs' attorneys' fees and costs, plaintiffs moved to strike the Oxford defendants' Answer. While that motion was pending before Judge Wall, this Court granted plaintiffs' motion to amend their Complaint to add the Spinelli defendants on the grounds that plaintiffs were "shared employees" of the Oxford and Spinelli defendants. (Sept. 18, 2007 Order at 3.) On September 30, 2008, Judge Wall issued a Report and Recommendation recommending that the Oxford defendants' Answer be stricken and default judgment be entered against them.

After reviewing the Oxford defendants' objections, this Court adopted Judge Wall's Report and Recommendation in its entirety. (Nov. 18, 2009 Mem. & Order at 4.) Because the Spinelli defendants were not added until after plaintiffs' motion to strike had been filed, the Court "[did] not read the Report to apply to [the] Spinelli [defendants]." (*Id.* at 9.) The Court concluded that "because Plaintiffs' claims against [the Spinelli defendants] remain pending, and because Plaintiffs have not moved under Rule 54(b) for the entry of a final judgment as to the defaulting defendants, default judgment will not be entered until such time as Plaintiffs' claims against [the] Spinelli [defendants] are resolved." (*Id.* at 9-10.) Plaintiffs and the Spinelli defendants concluded discovery and have cross-moved for summary judgment. Plaintiffs' present motion for a bond was filed thereafter.

# DISCUSSION

## I. Legal Standard

Local Rule 54.2 provides: "The Court, on motion or on its own initiative, may order any party to file an original bond for costs or additional security for costs in such an amount and so conditioned as it may designate." The Second Circuit has stated that "the primary purpose of the bond requirement is to insure that whatever assets a party *does* possess will not have been dissipated or otherwise have become unreachable by the time such costs actually are awarded." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999). "Courts have broad discretion in deciding whether a party should be required to post such a bond." *Beautiful Jewellers Private Ltd. v. Tiffany & Co.*, 2008 WL 2876508, at *2 (S.D.N.Y. July 21, 2008) (citing *Selletti*, 173 F.3d at 110-11). In exercising this discretion, the Court should consider the following factors: "'(1) the financial condition and ability to pay of the party who would post the bond; (2) whether that party is a resident or foreign corporation; (3) the merits of the underlying claims; (4) the extent and scope of discovery; (5) the legal costs expected to be incurred; and (6) compliance with past court orders.'" *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 2005 WL 578917, at *1 (S.D.N.Y. Mar. 11, 2005) (quoting *Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 207 F.R.D. 23, 24 (E.D.N.Y. 2001)).

## II. Plaintiffs are Entitled, in Principle, to a Bond in Some Amount

### A. Financial Condition and Ability to Pay

A party's "apparent 'lack of assets is itself sufficient to warrant attachment of costs under [Local] Rule 54.2.'" *Beautiful Jewellers*, 2008 WL 2876508 at *2 (quoting *Sea Trade Co. Ltd. v. FleetBoston Fin. Corp.*, 2008 WL 161239, at *1 (S.D.N.Y. Jan. 15, 2008)). Plaintiffs assert that

4

"the precarious finances of the [Oxford] defendants are beyond cavil." (Pls.' Mem. at 6.) Specifically, the Oxford defendants have admitted that OMS is insolvent and that Richard and Peter Pinto are currently unemployed and "facing federal criminal charges."[1] (Defs.' Opp'n at 1-2.) With respect to Patrick Pinto, it is unclear whether or not he is currently employed.[2] Charles Harris[3] admittedly works for RUI Credit Services, Inc., an entity described by plaintiffs as "a debt collection agency located less than two miles from OMS's former office," (see Pls.' Mem. at 5; Defs.' Opp'n at 4), and plaintiffs assert that John Fiumano[4] works as the CEO of Kadent Corporation, "an accounts receivable firm specializing in debt collection services" (Pls.' Mem. at

---

[1] On May 11, 2012, Peter and Richard Pinto each pled guilty to one count of conspiracy to commit wire fraud, bank fraud, and money laundering, in violation of 18 U.S.C. § 371, and one count of wire fraud, in violation of 18 U.S.C. § 1343. (See Docket No. 3:12 CR 101 (SRU) (D.Conn.).) Both are presently awaiting sentencing and, according to plaintiffs, face a sentence of up to 35 years imprisonment and $20 million in fines. (See Aff. of Jean Y. Park, Esq., dated May 23, 2012 ("Park Aff."), Ex. 2.)

[2] As plaintiffs point out, counsel for the Oxford defendants represented in a February 29, 2012 pre-motion conference letter that Patrick Pinto was employed by "RUI Credit Services, Inc.," located in Melville, New York. (Pls.' Mem. at 5 (citing Defs.' Feb. 29, 2012 Letter at 3).) In their present opposition papers, however, the Oxford defendants now assert that Patrick Pinto is unemployed. (Defs.' Opp'n at 1-2.)

[3] The Oxford defendants contend that Charles Harris has filed a Chapter 7 Petition in the United States Bankruptcy Court in this District and, as such, the present motion should be stayed as against not only Harris but as against the other individual Oxford defendants. (Defs.' Opp'n at 2.) The Court notes that on August 14, 2012 – after the pending motion had been fully briefed and filed – Harris was granted a discharge under 11 U.S.C. § 727 and his Chapter 7 bankruptcy case was closed. (See Docket No. 16, Case 8-12-72875-reg (Bankr. E.D.N.Y.))

[4] In their opposition papers, the Oxford defendants assert that Fiumano should be dismissed from this action as an improper party. (Defs.' Opp'n at 7.) As noted above, the Oxford defendants' Answer (which responded to the Complaint on behalf of Fiumano) was stricken by this Court in November 2009, and Fiumano never sought reconsideration of or appealed this ruling. Therefore, to the extent the Oxford defendants now attempt to move post-default for his dismissal from this action via their opposition papers, such application is denied.

5

5; Park Aff., Ex. 5).

Given that OMS is a defunct corporate entity, and two (if not three) of the individual Oxford defendants are unemployed, and both Richard and Peter Pinto are facing the prospect of extended imprisonment and/or hefty civil monetary penalties, the Court finds that the first factor weighs in favor of the imposition of a bond. *See Beautiful Jewellers*, 2008 WL 2876508 at *2.

### B.    Foreign Corporation

Because OMS was a New York corporation and plaintiffs have not asserted that any of the individual Oxford defendants are non-residents, this factor weighs against requiring a bond. *See RLS Assocs.*, 2005 WL 578917 at *1.

### C.    The Merits of the Underlying Claims

Plaintiffs contend that "there is no question in this case as to the merits of [their] underlying claim against the [Oxford] Defendants" given that "this Court has already struck the answer of the [Oxford] Defendants and all of the allegations in the complaint must be deemed admitted against them." (Pls.' Mem. at 7.) The Oxford defendants do not dispute that their Answer has been stricken and they are in default.

The Oxford defendants assert, however, that "the case law now cited by plaintiffs' counsel does not clearly support" their entitlement to a bond because in the majority of the cases cited, "it was the defendant(s) who were requesting that an original bond or undertaking be posted by the plaintiff(s), not the reverse." (Defs.' Opp'n at 8 (emphases in the original).) Indeed, many of the cases cited by both parties involve requests made by defendants for orders requiring plaintiffs to post bonds pursuant to Local Rule 54.2. At least one court within this District has articulated a rationale for "distinguishing between plaintiffs and defendants in the

6

application of" Local Rule 54.2:

> There are times when defendants need protection from the machinations of overzealous plaintiffs who have claims of dubious merit and who, because they are essentially judgment proof, have no incentive to hold down the costs for which they may be held liable . . . The situation is entirely different, however, when it is the *plaintiff* who seeks to impose on a defendant of modest means the obligation to post a bond to cover the plaintiff's potential costs and attorneys' fees, the extent of which are often largely within the plaintiff's ability to control.

*Pfizer, Inc.*, 207 F.R.D. at 25-26.

There is no authority from within the Circuit, however, that would support a categorical ban on a plaintiff's ability to seek an order requiring a defendant to post a bond. Indeed, the language of Local Rule 54.2 makes clear that it allows a court to "order *any party* to file an original bond for costs." Moreover, there are a number of courts within the Circuit that have entertained – and granted – applications for bonds made by plaintiffs. *See Pfizer, Inc.*, 207 F.R.D. at 25 (collecting cases); *see also Joza v. WW JFK LLC*, 2010 WL 3619547, at *5 (E.D.N.Y. Sept. 10, 2010) (affirming Magistrate Judge's order requiring defendant to file a bond pursuant to Local Rule 54.2); *Mohamed v. Rajoub*, 2008 WL 194746, at **3-4 (S.D.N.Y. Jan. 17, 2008) (addressing plaintiff's request that defendants post a bond); *RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 225-26 (S.D.N.Y. 2006) (concluding that both plaintiff and defendant should post a bond under Local Rule 54.2, and noting that "equity requires that the plaintiff have some measure of security for its recovery if the trial results in a judgment in its favor").

Thus, the merits factor weighs in favor of imposing a bond, and the fact that plaintiffs (as opposed to defendants) are seeking an order requiring the imposition of a bond does not impact

this Court's analysis.

### D. Extent and Scope of Discovery

Neither party has addressed the extent that this factor weighs for or against the imposition of a bond. As the Oxford defendants have defaulted, there is no more discovery to be undertaken with respect to them, and plaintiffs have not argued that the completed discovery has been unusually extensive. Accordingly, this factor does not weigh in favor of the imposition of a bond. *See Pfizer*, 207 F.R.D. at 25 (finding this factor weighed against the requirement of a bond when discovery was "near completion and in any event has not been particularly extensive").

### E. Compliance With Court Orders

The Oxford defendants' failure to comply with Court orders is extensive, and was well-documented by Judge Wall in his September 30, 2008 Report and Recommendation:

> In sum, while the acts of defendants, viewed individually, might be excused as simple acts of negligence, examination of their actions as a whole warrants a different conclusion. Consideration of defendants' actions throughout discovery – their piecemeal production of materials only after motion practice, their frequent declarations of diligence followed by production of more responsive materials, their obstructive conduct of not making specific materials available for review in violation of a court order, their late insistence on a confidentiality order as a condition for production, their suggestions that they need not produce court-ordered materials because of a possible statute of limitations defense or that the matter need not be resolved in federal court, their 'objections' directed to the recipient of a non-party subpoena – leads the court to a finding that their behavior has been, at the very least, grossly negligent.

(R&R at 15-16.) Judge Wall noted that "despite three orders directing compliance and the imposition of monetary sanctions, [the Oxford defendants] continue[d] to delay and obstruct." (*Id.* at 16.) The recommendation that the Court strike the Oxford defendants' Answer was based,

in part, on Judge Wall's conclusion that "lesser sanctions would neither remedy defendants' noncompliance nor discourage additional misbehavior." (*Id.*)

Accordingly, this factor favors the imposition of a bond. *See Beautiful Jewellers*, 2008 WL 2876508 at *4 (finding party's "track record with respect to discovery . . . suggests that a bond should be required" when "it cannot seriously be disputed that discovery has proceeded at a snail's pace because of BJPL's difficulties in complying with this Court's discovery orders"); *Baker v. Urban Outfitters, Inc.*, 2004 WL 2546805, at *2 (S.D.N.Y. Nov. 10, 2004) (finding this factor weighed in favor of a bond when "discovery was prolonged and complicated by [plaintiff's] conduct").

### F.     Conclusion

Upon balancing the factors described above, and in the exercise of its discretion, the Court finds that plaintiffs have demonstrated that, in principle, they are entitled to an order requiring the Oxford defendants to post a bond for costs. Plaintiffs have adequately described the Oxford defendants' apparently precarious financial situation, have made clear the merits of their claims as against those defendants, and have pointed to a well-documented history of the Oxford defendants' failure to comply with court orders. However, although the plaintiffs have demonstrated their entitlement to the relief sought in principle, they have failed to adequately articulate the basis for their request for a bond in the amount of $250,000, as is discussed more fully below.

### III.    *Plaintiffs Have Failed to Demonstrate Their Entitlement to a Bond in the Amount of $250,000*

"Under Local Civil Rule 54.2, courts have considerable discretion regarding the amount

9

of a bond to secure costs." *Beautiful Jewellers*, 2008 WL 2876508 at *4 (citing *RLS Assocs.*, 464 F. Supp. 2d at 221-22). "The taxable costs that a party may be required to bond include the cost of deposition and trial transcripts and copies of exhibits that are introduced into evidence or used in connection with motion practice." *Id.* (citing 28 U.S.C. § 1920; Fed. R. Civ. P. 54; Local Rule 54.1). In addition, where, as here, attorney's fees may be awarded to a prevailing party,[5] the amount of the bond may include such attorney's fees. *See Selletti*, 173 F.3d at 110 (finding "the district court did not abuse its discretion by requiring plaintiff to file a security for costs and attorney's fees, which may be awarded to the prevailing party in a copyright action").

Although plaintiffs assert that the Oxford defendants should be required to post a bond in the amount of $250,000, they do not provide any cost estimate or invoices for attorney's fees that would support the requested amount. Moreover, plaintiffs have not delineated what portion of that amount represents costs and fees that have been incurred to date, and what portion is meant to cover any anticipated future expenses. In addition, as the Oxford defendants noted, they were in default as of November 18, 2008 and plaintiffs have not addressed their argument that any costs or attorneys' fees incurred after that date are arguably not attributable to the Oxford defendants. (Defs.' Opp'n at 6.) Without some support for the bond amount requested, the Court will not require the Oxford defendants to post a $250,000 bond, and the Court will not set some arbitrary bond amount instead. *See RLS Assocs.*, 2005 WL 578917 at *4.

---

[5] Under both the FLSA and New York Labor Law, a prevailing plaintiff may seek an award of reasonable attorneys' fees and costs from the defendant. *See* 29 U.S.C. § 216(b) (2000); N.Y. Lab. Law § 198 (McKinney 2002).

10

## *CONCLUSION*

While plaintiffs have established their entitlement to a bond in principle, their request that this Court order the Oxford defendants to post a bond in the amount of $250,000 is denied without prejudice. Should plaintiffs wish to renew their application, they must provide some documentary support for the bond amount requested.

**SO ORDERED.**

Dated: Central Islip, New York
      January 10, 2013                               /s/
                                                       Denis R. Hurley
                                                       Unites States District Judge