```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
```

RACHEL M. TERI AND DANIEL WATKINS, on
behalf of themselves and all other similarly
situated current and former employees as Class
Representatives,

                Plaintiffs,

      v.

**MEMORANDUM & ORDER**
05-CV-2777 (PKC) (RML)

SALVATORE SPINELLI and SALVATORE
SPINELLI LAW OFFICE,

                Defendants.

```
----------------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

      Representative Plaintiffs, Rachel Teri and Daniel Watkins, along with Opt-In Class Plaintiffs (collectively, "Plaintiffs"), move for summary judgment against Salvatore Spinelli ("Spinelli" or "Defendant") and the Salvatore Spinelli Law Office ("Spinelli Law Office," together with Spinelli, the "Spinelli Defendants") for failing to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y.C.R.R ¶ 142.2-2.

      Spinelli, an attorney proceeding *pro se*,[1] opposes Plaintiffs' motion for summary judgment and cross-moves for: (i) decertification of Plaintiffs' FLSA collective action; (ii)

---

[1] Typically, when a party proceeds *pro se*, courts will liberally construe that party's supporting papers to "raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted). However where, as here, the *pro se* party is an experienced attorney, the Court is not obligated to read his pleadings with the degree of liberality given to non-attorney *pro se* plaintiffs. *See, e.g., Muset v. Ishimaru*, 783 F. Supp. 2d 360, 364 n. 1 (E.D.N.Y. 2011); *Bliven v. Hunt,* 478 F. Supp. 2d. 332, 334-35 (E.D.N.Y. 2007) (citing *Chira v. Columbia Univ. in New York City,* 289 F. Supp. 2d 477, 482 (S.D.N.Y. 2003)).

dismissal of co-defendant John P. Fiumano from this action; (iii) dismissal of the Spinelli Law Office from this action; (iv) dismissal of Spinelli from this action on the grounds that all of Plaintiffs' claims as against him are barred by the FLSA's statute of limitations; (v) an order precluding Plaintiffs from certifying as a class pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a) and/or New York Civil Practice Law and Rule ("NYCPLR") 902; and (vi) dismissal of the action without prejudice upon decertification of the Plaintiffs' FLSA action. (Spinelli Notice of Cross-Motion ("Dkt. 128-17").)

## BACKGROUND

The Court recites only the history and facts necessary to resolve the motions at bar.

### I. Procedural History

On June 8, 2005, Plaintiffs Teri and Watkins brought this action against their former employer, Defendant Oxford Management Services, Inc. ("OMS") and individual defendants who were OMS officers and directors, Richard A. Pinto, Charles Harris, Patrick R. Pinto, Peter C. Pinto and John Fiumano ("Individual OMS Defendants," together with OMS, the "OMS Defendants"). Plaintiffs alleged that they are entitled to unpaid overtime wages from the OMS Defendants, liquidated damages, and attorneys' fees. (Compl. ¶ 2. (Dkt. 1)). The Spinelli Defendants were not yet a party to the action.

On September 26, 2006, Plaintiffs sought court approval ("Dkt. 32"), and subsequently moved, to amend their Complaint to add the Spinelli Defendants to the action ("Motion to Amend"),[2] alleging that, during the course of discovery, they obtained evidence supporting the extension of their overtime pay claims to the Spinelli Defendants under the FLSA's single enterprise or joint employer theories of liability. (Dkt. 45.)

---

[2] In accordance with the Court's order, dated November 21, 2006, and the subsequent extension granted at defendants' request, dated January 22, 2007, Plaintiffs filed their Motion to Amend on February 5, 2007. (Dkt. 45.)

3

On August 13, 2007, with the Motion to Amend pending, Plaintiffs moved to strike the OMS Defendants' Answer pursuant to Rule 37 of the Federal Rules of Civil Procedure ("Motion to Strike") (Dkt. 58) for, *inter alia*, repeated failures to comply with discovery requests and the Court's orders. (Dkt. 61.) By Order dated September 18, 2007, Judge Hurley granted Plaintiffs' Motion to Amend. (Dkt. 71.) Thereafter, by Memorandum and Order, dated November 18, 2009, Judge Hurley, adopting Magistrate Judge Wall's Report and Recommendation, granted Plaintiffs' Motion to Strike in its entirety, striking the OMS Defendants' Answer and directing the Clerk of the Court to note the default of the OMS Defendants. (Dkt. 86.) The Court concluded, however that because Plaintiffs' claims against Spinelli remained pending, and because Plaintiffs had not moved for the entry of a final judgment as to the defaulting defendants, the default judgment would not be entered until such time as Plaintiffs' claims against Spinelli were resolved. (Dkt. 86.) As a result, only Plaintiffs' claims against Spinelli and the Spinelli Law Office remain to be litigated.

The case was reassigned to the undersigned on April 18, 2013. Plaintiffs' motion for summary judgment and the Spinelli Defendants cross-motions are before the Court.

## II. Relevant Factual History

### A. The Parties

Defendant OMS is a New York corporation that engaged in business as a debt collections agency. (Plaintiffs' Local Rule 56.1 Statement ("Pl. 56.1") ¶¶ 1-2.)[3] Its principal office is

---

[3] The Court construes any disputed facts in the light most favorable to the Spinelli Defendants, as the non-moving parties, for purposes of Plaintiffs' summary judgment motion. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). However, where the Spinelli Defendants either (i) admit or (ii) deny without citing to admissible evidence certain of the facts alleged in Plaintiffs' Rule 56.1 Statement (Dkt. 128-2), this Court shall deem any such facts undisputed. *See* Local Rules of the United States District Courts for the Southern and Eastern

4

located at 135 Maxess Road, Melville, New York 11747 ("Maxess Road Property"). (Pl. 56.1 ¶ 1.) The Individual OMS Defendants were officers and/or directors of OMS during the relevant time period. (Pl. 56.1 ¶ 5.)

OMS employed Plaintiffs as collections agents during the time period relevant to this action. (Pl. 56.1 ¶ 3.) Teri worked for OMS as a collections agent from September or October 2003 until January 2004. (*Id.*) Watkins worked for OMS and Spinelli from September 19, 2000 until June 18, 2004. (*Id.*) OMS collections agents were responsible for communicating with individual consumers who owed debts to OMS clients. (Harris Tr. 10.)[4]

Spinelli is an attorney who has operated a solo law practice since 1972. (Spinelli Tr. 23-25.)[5] From approximately 2003 to 2009, Spinelli maintained an office on the second floor of the Maxess Road Property, where he engaged in private practice and also served as General Counsel for OMS. (Spinelli Tr. 25-29.) Oxford Realty Corp. ("Oxford Realty") owns the Maxess Road Property, and OMS leases space from Oxford Realty. (Spinelli Tr. 30-31.) Spinelli paid no rent for his office, which was "gratis from Oxford [Realty]." (Spinelli Tr. 28.) Oxford Realty and OMS share common ownership. (Spinelli Tr. 30-31.) Specifically, OMS Defendants Peter Pinto, Patrick Pinto, and Harris have ownership interests in both companies. (Spinelli Tr. 30-

---

Districts of New York 56.1(c)-(d). A standalone citation to Pl. 56.1 denotes that this Court has deemed Plaintiffs' underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to such underlying documents.

[4] "Harris Tr." refers to the transcript of the July 17, 2006 deposition of Individual OMS Defendant Charles Harris ("Harris") (Dkt. 128-14), which is Exhibit ("Ex.") 10 to the Park Declaration in Support of Plaintiffs' Motion for Summary Judgment Against the Spinelli Defendants ("Park Decl." (Dkt. 128-4).)

[5] "Spinelli Tr." refers to the transcript of the May 24, 2010 deposition of Spinelli (Dkt. 128-8), which is Ex. 4 to the Park Decl.

31.) Spinelli and his wife have ownership rights in Oxford Realty but not OMS. (Spinelli Tr. 31-32, 34.)

B. Spinelli's Relationship with OMS

Spinelli began to function as counsel for OMS in 2002. (Spinelli Tr. 74.) From approximately 2002 to 2003, Spinelli operated out of an office located at 535 Broad Hollow Road, Melville, New York, which was owned by Oxford Realty. (Spinelli Tr. 35-36.) Around that time, Spinelli began "employing" OMS collections agents. (Spinelli Tr. 74-75.) He shared employees with OMS, including Watkins, as well as Opt-in Plaintiffs Steven Bristol, Richard Costa, Kenneth Garretson, Adam Nagel, George Ramirez, and Jonathan Gascott. (Pl. 56.1 ¶ 13.)

In addition to sharing OMS collections agents, Spinelli employed supervisor-level OMS personnel. (Pl. 56.1 ¶¶ 15-16.) For example, Spinelli employed Harris as Director of Collections in a supervisory role while Harris was simultaneously employed by OMS as Executive Vice President. (Spinelli Tr. 66-68, 185-86.) Spinelli also employed Richard Madden as supervisor of collections during his tenure with OMS. (Spinelli Tr. 186-87.) Spinelli and OMS shared the same "bookkeeper," Richard Galeota. (Spinelli Tr. 87-88.) Spinelli employed 59 collections agents, all of whom were simultaneously employed by OMS, to perform work for him related to OMS collections. (Pl. 56.1 ¶¶ 17-18 (listing names).)

Spinelli's work for Oxford included sending out OMS collections letters on his letterhead and supervising debt collections agents. (Spinelli Tr. 74-77, 110-11.) From 2002 until 2008, approximately 80% of Spinelli's income derived from OMS-related work. (Spinelli Tr. 78-81.)

C. Spinelli's Relationship with Plaintiffs

Spinelli employed and supervised OMS collections agents from 2002 through 2004. (Pl. 56.1 ¶ 21.) However, OMS controlled the agents' work schedules, rates of pay, benefits,

commissions, and vacation pay. (Spinelli 112-14.) Spinelli and OMS maintained the same time clock, which employees used to punch in and out of work. (Pl. 56.1 ¶ 22.)

"Salvatore Spinelli Esq." was designated federal employer tax identification number 11-2256094 ("Spinelli's Employer Tax ID"). (Park Decl. Ex. 7.)[6] Spinelli's W-2 Statements reflect that he employed 59 employees, who were simultaneously employed by OMS, to perform OMS-related work for him. (Park Decl. Ex. 7; Spinelli Tr. 70, 73.) Spinelli, like OMS, paid the collections agents he employed on an hourly basis. (Pl. 56.1 ¶¶ 23-24.) Spinelli and the OMS Defendants failed to pay overtime wages to OMS collections agents who worked more than 40 hours in a work week. (Pl. 56. 1 ¶ 24.) At some point[7] after Spinelli discovered that OMS was not paying premium overtime wages,[8] Spinelli advised OMS Chief Financial Officer Pat LaMarco that OMS was obligated to pay such wages to its collections agents. (Pl. 56.1 ¶ 26.)

## DISCUSSION

I. **Motion to Dismiss the "Salvatore Spinelli Law Office" from this Action**

The Court first considers Spinelli's motion to dismiss the Spinelli Law Office from this action. Spinelli claims that "there is no entity known as the 'Salvatore Spinelli Law Office,'" that he operates his law practice as a sole proprietorship, and that he has never done business

---

[6] Park Decl. Ex. 7 is a copy of "Forms W-2 Wage and Tax Statements 2002" ("W-2 Statements"), reflecting all individuals employed by Spinelli during that tax year. (Dkt. 128-11.)

[7] Neither party has presented evidence regarding the date such conversation occurred. That fact may be relevant to a determination regarding willfulness; however, the Court does not reach that issue in this Opinion. *See infra* at III.B.

[8] Premium overtime wages, as discussed *infra*, are calculated at one and one-half times an employee's regular hourly rate for hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142–2.2.

7

under any other organizational structure. (Spinelli Decl. ¶ 45; Ans. ¶ 28.)[9] Plaintiff has offered no evidence to rebut Spinelli's claim. The only relevant record evidence, Spinelli's W-2 Statements, submitted by Plaintiffs, show that Spinelli's Employer Tax ID was issued to "Salvatore Spinelli Esq.," not the "Salvatore Spinelli Law Office." (*See* Park. Decl. Ex. 7.) For that reason, and lacking evidence to the contrary, Defendant's motion to dismiss the "Salvatore Spinelli Law Office" from this action is GRANTED.[10]

## II. Summary Judgment Standard

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 173-74 (2d Cir. 2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies "which facts are material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation omitted). However, the nonmoving party cannot avoid summary

---

[9] "Spinelli Decl." refers to the Spinelli Declaration In Opposition to Plaintiffs' Motion for Summary Judgment and In Support of the Spinelli Defendants' Cross-Motions. (Dkt. 128-19.) "Ans." refers to the OMS and Spinelli Defendants' Answer to the Plaintiffs 'Amended Complaint. (Dkt. 74.)

[10] In any event, as a sole proprietor, Spinelli is personally liable for debts arising out of his business conduct. *See, e.g., Care Envtl. Corp. v. M2 Techs., Inc.,* 05-CV-1600 (CPS), 2006 WL 148913, at *6 (E.D.N.Y. Jan. 18, 2006) (citations and quotation omitted).

judgment simply by relying "on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quotations and citations omitted). That party must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008) (quotations and citation omitted).

### III. Plaintiffs' Motion for Summary Judgment

Plaintiffs move for summary judgment against Spinelli for failing to pay overtime wages in violation of the FLSA and NYLL. Under the FLSA, employers are required to compensate their employees at one and one-half times the employee's regular hourly rate for hours worked in excess of 40 per week. 29 U.S.C. § 207(a)(1). The NYLL provides wage and overtime protections for employees similar to the protections afforded to employees by the FLSA. *Reiseck v. Universal Commc'ns of Miami, Inc.,* 591 F.3d 101, 105 (2d Cir. 2010) ("The NYLL, too, mandates overtime pay and applies the same exemptions as the FLSA.") The NYLL requires that employers pay their employees overtime at a rate of one and one-half times the employee's regular rate for time worked in excess of 40 hours during any work week, unless the employees are exempt. 12 N.Y.C.R.R. § 142–2.2.

Spinelli concedes that Plaintiffs were improperly denied proper overtime compensation. (Spinelli Tr. 228.)[11] He disputes, instead, that he operated as Plaintiffs' "joint employer," along with the defaulted OMS Defendants, for liability purposes under the FLSA and NYLL.[12]

---

[11] To the extent Spinelli asserts that his and/or OMS's payment of commissions and/or bonuses to Plaintiffs bars their overtime wage claim, his claim is factually unsupported.

[12] Plaintiffs also argue that Spinelli and OMS constituted a "single enterprise" for purposes of liability under the FLSA. (Pl. Mem. (Dkt. 128-15) at 6–7.) In determining whether multiple defendants constitute a single employer, courts have, in certain contexts, considered the following factors: (1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *See, e.g., Cook v.*

### A. Employer Status

#### 1. Definition of "Employer" Under the FLSA and NYLL

The FLSA creates liability for any "employer" who violates its terms. *See* 29 U.S.C. § 207(a)(1). Under the FLSA, an "employer" is defined broadly "to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d); *Tony & Susan Alamo Found. v. Secy'y of Labor*, 471 U.S. 290, 296 (1985) (construing the FLSA liberally because broad coverage is essential to accomplish the FLSA's goals (citations omitted)). The FLSA's definition of "employer" may apply to "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. §§ 203(a).

"The NYLL's definitions are nearly identical to the FLSA's." *Glatt v. Fox Searchlight Pictures Inc.*, 11-CV-6784 (WHP), 2013 WL 2495140, at *6 (S.D.N.Y. June 11, 2013) (citing N.Y. Lab. Law § 2(7)). The NYLL defines "employer" to include "any person … employing any individual in any occupation, industry, trade, business or service" or "any individual … acting as employer." N.Y. Lab. Law. §§ 190(3), 651(6). District courts in this Circuit "have interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Sethi v. Narod*, 11-CV-2511 (MKB), 2013 WL 5453320, at *23 (E.D.N.Y. Sept. 30, 2013) (citations and quotations omitted) (collecting cases).

---

*Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2d Cir. 1995). While, Spinelli and OMS arguably qualify as a "single employer" under this test, the Court declines to so hold for two reasons. First, the Second Circuit has never expressly applied the integrated enterprise test in the FLSA context. *See Hart v. Rick's Cabaret Int'l, Inc.*, 09-CV-3043 (PAE), 2013 WL 4822199, *31 n. 16. Second, the Court need not reach that issue given its finding that Spinelli and OMS were "joint employers" for purposes of the FLSA and NYLL.

a. *Joint Employer Liability*

The relevant provision of the FLSA, 29 U.S.C. § 203(g), defines "employ" as "to suffer or permit to work." An individual may simultaneously have multiple "employers" for the purposes of the FLSA, in which case, "all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the [FLSA]." 29 C.F.R. § 791.2(a); s*ee also Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008); *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003). Department of Labor regulations pertaining to the FLSA specifically contemplate joint employer responsibility for overtime:

> "(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
>
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer."

29 C.F.R. § 791.2(b) (footnotes omitted); *see also Barfield* 537 F.3d at 141 (recognizing the significance of 29 C.F.R. § 791.2 in determining FLSA responsibilities).

b. *The Economic Reality Test for Determining Who Qualifies as an Employer Under the FLSA*

The determination of whether an employer-employee relationship exists for purposes of the FLSA is grounded in "economic reality rather than technical concepts." *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33 (1961); *see also Irizarry v. Castimatidis,* 722 F.3d 99, 104 (2d Cir. 2013); *Barfield* 537 F.3d at 141. The determination of whether multiple defendants are a plaintiff's joint employers is based on the totality of the circumstances in light

of the economic realities of the employer-employee relationship. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)); *see also Barfield,* 537 F.3d at 141–42 (holding that employment is "to be determined on a case-by-case basis by review of the totality of the circumstances.").

"In assessing the 'economic reality' of a particular employment situation," the Second Circuit has "identified different sets of relevant factors based on the factual challenges posed by particular cases." *Barfield*, 537 F.3d at 142. For example, the "formal control" test arose out of *Carter v. Dutchess Community Coll.,* 735 F.2d 8 (2d Cir. 1984). There, the court established four factors to "determine the 'economic reality' of a putative employment relationship, specifically 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Id.* (citing *Carter*, 735 F.2d at 12 (citation and quotation omitted)).

More recently, in *Zheng*, a "joint employer" case, the Circuit identified a number of relevant factors in determining whether a person or entity lacking formal control—as defined by the *Carter* factors—could nevertheless exercise "functional control" over an employee. *Id.* (citing *Zheng*, 335 F.3d at 72). While setting out six factors[13] relevant to the factual scenario

---

[13] The *Zheng* factors examine: "1) whether [the alleged joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [original employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [alleged joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer]." *Zheng*, 355 F.3d at 72.

12

under review, the court advised that in general, a court may consider "any other factors it deems relevant to its assessment of the economic realities." Z*heng*, 355 F.3d at 72.

The Circuit, in *Barfield*, after conducting an extensive review of this and other relevant precedent, concluded that there is "no rigid rule for the identification of an FLSA employer." *Barfield*, 537 F.3d at 143. Instead the Circuit has provided a "'nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Id.* (quoting *Zheng*, 355 F.3d at 75–76). The "economic reality is determined based upon *all* the circumstances, [and] any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir. 1999); *see also Zheng*, 355 F.3d at 71-72. A district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship. *See Zheng*, 355 F.3d at 71-72.

District courts in this Circuit have regularly applied the same factors and tests to determine whether entities are joint employers under the NYLL. *See e.g., Hart*, 2013 WL 4822199, at \*31; *Glatt*, 2013 WL 2495140, at \*6 (collecting cases). As described above, the statutory standard for employer status under the NYLL is nearly identical to that under the FLSA.

### 2. Analysis of Spinelli's Joint Employer Status

In the present case, it is undisputed that OMS, which has already defaulted in this suit, employed Plaintiffs. The issue is whether Spinelli also employed them. *See Zheng*, 355 F.3d at 66. Federal regulations and Circuit precedent "recognize the possibility of joint employment for

13

purposes of determining FLSA responsibilities." *Barfield*, 537 F.3d at 141 (citing 29 C.F.R. § 791.2(a); *Zheng*, 355 F.3d at 66.

To support his contention that he was not Plaintiffs' "employer," as the term is defined by the FLSA and the NYLL, Spinelli argues, that he "did not have authority to create new positions, hire, promote, suspend, or terminate employees; determine employee compensation rates, responsibilities, and work schedules, including access to or exceptions from overtime work … and set [or] enforce workplace policies." (Spinelli Aff. ¶¶ 5-13[14] (citing Spinelli Tr. 105, 110-115, 120, 149-50, 193-94, 230-31).) Taking these facts as true, as required on Plaintiffs' motion for summary judgment, Spinelli did not have "formal control" over the Plaintiffs. *See Carter*, 735 F.2d at 12. Thus, if *Carter* set forth the only test in this Circuit, Spinelli might be insulated from liability.

However, as discussed, applying the economic reality test, the Second Circuit has held that "an entity can be a joint employer under the FLSA even when it does not hire and fire its joint employees, directly dictate their hours, or pay them." *Zheng*, 355 F.3d at 70 (interpreting the Supreme Court's decision in *Rutherford*). Where, as here, "there is an arrangement between the employers to share the employee's services," and one "employer is acting directly or indirectly in the interest of the other employer," joint employer liability is found. 29 C.F.R. § 791.2. Analyzing the factors approved by the Second Circuit, though without rigid adherence to a specific test, the Court concludes that no reasonable jury considering the "economic realities" of the OMS/Spinelli/collection agent relationship could find that Spinelli was not Plaintiffs' joint employer under the FLSA and NYLL.

---

[14] "Spinelli Aff. " refers to Spinelli's Affirmation In Opposition to the Plaintiffs' Motion For Partial Summary Judgment. (Dkt. 128-26.)

a. *Spinelli Employed Plaintiffs and Shared Employees with OMS*

Spinelli concedes that he employed OMS collections agents from 2002 to 2004. (Pl. 56.1 ¶ 13; Spinelli Tr. 57-63, 74-75.) Spinelli further concedes that he "shared employees" with OMS and jointly maintained their employment records. (Pl. 56.1 ¶ 13; Spinelli Aff. ¶ 11.) According to Spinelli, "Oxford requested that [he] send out collection letters under the Spinelli letterhead. In order to do that, the collectors[,] to comply with the Fair Debt Collection Practice Act, had to be on [Spinelli's] payroll, hence the reason for the shift from Oxford to Spinelli." (Spinelli Tr. 75).

Indeed, Spinelli and OMS shared a bookkeeper, Richard Galeota, who, according to Spinelli, determined which employees would be paid from the Spinelli account and which would be paid from the OMS account. (Spinelli Tr. 87.) Employees Spinelli shared with OMS were on Spinelli's payroll from 2001-2004. (Spinelli Tr. 105.) Those same employees transferred back onto the Oxford payroll in 2004. (*Id*.) Employees shifted between Spinelli's payroll and OMS's payroll without notification as to when or why the change would occur. (Watkins Tr. 21.)[15] Every employee, save one, that Spinelli ever employed was simultaneously working for OMS. (Spinelli Tr. 62-63.)

b. *Plaintiffs Performed Work For and Received Compensation From Spinelli*

The collections agents performed services in furtherance of Spinelli's business, and he compensated them for such work. (Pl. 56. 1 ¶ 17; Park Decl. Ex. 7.) From 2002 to 2004, the collections agents received wages directly from Spinelli's account. (Spinelli Tr. 88, 120).

---

[15] "Watkins Tr." refers to the transcript of the July 12, 2010 deposition of Plaintiff Watkins (Dkt. 128-12), which is Ex. 8 to the Park. Decl.

Spinelli's W-2 Statements indicate that at least 59 employees were paid under Spinelli's Employer Tax ID. (Park. Decl. ¶ 7.)

### c. *Spinelli and OMS Shared Resources*

Spinelli and OMS shared an office and equipment. Spinelli maintained an office on the OMS premises and shared an ownership in these premises. (Spinelli Tr. 31-32, 34.) From approximately 2003 to 2009, Spinelli worked out of an office on the second floor of the Maxess Road Property. (Spinelli Tr. 25-29.) Spinelli and OMS shared a time clock, which employees used to punch in and out of work. (Pl. 56.1 ¶ 22.)

### d. *Spinelli and OMS Had a Shared Business Purpose*

Spinelli and the OMS Defendants engaged in related activities for the shared business purpose of performing debt collections and related work for OMS clients. (Pl. 56.1 at 19.) Spinelli served as general counsel to OMS, and executed tasks for OMS, including sending collections letters out on his letterhead and handling delinquent accounts. (Pl. 56.1 ¶¶ 11, 19.) Spinelli derived about 80% of his business through OMS-related work from 2002 to 2007. (Spinelli Tr. 80-81.) From 2002 to 2004, Spinelli supervised the collections agents and shared four management-level employees with OMS, each of whom also supervised the collections agents. (Spinelli Tr. 185.)

Even viewed in the light most favorable to Spinelli, the facts above—including many of his own concessions—demonstrate that Spinelli, along with OMS, jointly employed Plaintiffs. The Court GRANTS summary judgment for the Plaintiffs on this issue.

## B. Willfulness, Liquidated Damages and Three-Year Statute of Limitations

Plaintiffs assert that they are entitled to liquidated damages and the three-year statute of limitations applicable to willful violations of the FLSA's overtime pay provisions. The court

defers ruling on the willfulness element of Plaintiffs' claims for the following reasons: (1) the statute of limitations issue is resolved on other grounds (*see* Section IV below); (2) having concluded that Spinelli and OMS served as "joint employers," a decision regarding willfulness, and the attendant damages calculations, may only be fairly determined when documentation and argument regarding Plaintiffs' hours worked for both Spinelli and OMS are presented to the Court; and (3) the parties have not briefed, *inter alia*, the effect of "good faith" or willfulness under the NYLL, which was amended in 2009, subsequent to the term of Plaintiffs' employment.

### IV. Statute of Limitations

Spinelli moves to dismiss the claims against him, arguing that they are time barred. The motion is DENIED.

Absent a finding of willfulness, a suit under the FLSA must be commenced within two years after the cause of action has accrued. 29 U.S.C. § 255.[16] The limitations period for violations of the relevant provisions of the New York Labor Law is six years. *See* N.Y. Lab. Law. § 663(3).

Spinelli concedes that he was responsible for collections agents' compensation through December 31, 2004. As such, the statute of limitations would not run on Plaintiffs' FLSA claims until at least December 31, 2006 and the NYLL claims until at least December 31, 2010. Plaintiffs requested leave to amend their complaint to add Spinelli on September 26, 2006, before the statute of limitations had run on any of their claims. (Dkt. 32.) Under Judge Hurley's Individual Rules, Plaintiffs could not file their Motion to Amend until the court ordered date, which it set for January 30, 2007. Any time that elapsed after September 26, 2006 was out of

---

[16] Where a defendant is found to have acted willfully, the statute of limitations under the FLSA is extended from two to three years. *See* 29 U.S.C. § 255(a). As discussed *supra* at III.B., the Court defers judgment on the question of willfulness.

Plaintiffs control. It is the date that Plaintiffs sought to amend to add Spinelli that marks the date the action was commenced against him for statute of limitations purposes. *See, e.g., Northbrook Nat. Ins. Co. v. J & R Vending Corp.*, 167 F.R.D. 643, 648 (E.D.N.Y. 1996) (quoting *Northwestern Nat. Ins. Co. of Milwaukee, Wisconsin v. Alberts*, 769 F.Supp. 498 (S.D.N.Y. 1991)). In any event, Plaintiffs served the Motion to Amend on Spinelli on December 19, 2006, which means Spinelli had notice of the claims against him before the statute of limitations period had run. None of Plaintiffs claims are barred by applicable statutes of limitations.

V.   **Defendant's Cross-Motions**

   1. <u>Motion to Decertify Plaintiffs' FLSA Collective Action</u>

"Although the Second Circuit has yet to prescribe a particular method for determining whether members of a class are similarly situated, [on a post-discovery decertification motion] district courts in this circuit typically look to the '(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment].'" *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (quoting *Laroque v. Domino's Pizza, LLC,* 557 F.Supp. 2d 346, 352 (E.D.N.Y. 2008) (citations omitted)).

Plaintiffs have put forth proof that the collection agents' were victims of a common policy whereby OMS and Spinelli failed to compensate employees for overtime work. There is a common factual nucleus, Plaintiffs' theories of liability are identical, and the Spinelli/OMS' defenses are similar, if not identical, with respect to each Plaintiff. *See e.g., Glatt*, 2013 WL 2495140, at *18; *Torres v. Gristede's Operating Corp.*, 04-CV-3316 (PAC), 2006 WL 2819730, at *11. OMS having already defaulted, and given this Court's finding that Spinelli qualifies as a

joint employer, fairness and procedural considerations militate in favor of allowing the class to proceed collectively at this stage in the litigation.

2. Spinelli's Motion to Dismiss John Fiumano from this Action

Spinelli moves to dismiss claims against Defendant John Fiumano. (Dkt. 128-17.) However, in granting Plaintiffs' Motion to Strike, the Court entered default judgment against John Fiumano, along with the remainder of the OMS Defendants. (Dkt. 86.) To the extent this motion asks the Court to revisit its prior ruling, Spinelli provides no legal or factual support for doing so. Accordingly, Spinelli's motion to dismiss John Fiumano is DENIED.

3. Spinelli's Motion to Preclude Rule 23 Class Certification

Spinelli moves to preclude class certification under FRCP 23(a) and/or NYCPLR § 902. (Dkt. 128-17.) Though Plaintiffs' complaint makes class allegations (Compl. § 3, 16-23), Plaintiffs have not moved for, and the Court will not now consider, class certification under FRCP 23 or NYCPLR § 902. Spinelli's motion is therefore DENIED as moot.

*CONCLUSION*

For the reasons stated above, the Court grants in part and denies in part Plaintiffs' motion for summary judgment, and grants in part and denies in part Defendant's cross-motions. Specifically Plaintiffs' motion that liability extend to Spinelli as a joint employer is GRANTED. Spinelli is liable, jointly and severally with OMS, on all counts. The Court, however, defers on Plaintiffs' motion for summary judgment as to willfulness.

Defendant's motion to dismiss the Salvatore Spinelli Law Office from this action is GRANTED. The remainder of Defendant's motions are DENIED in their entirety.

The Clerk of the Court is directed to terminate party "The Salvatore Spinelli Law Office" and the motion pending at docket number 119.

The parties are directed to meet and confer, and submit to the Court, by November 15, 2013, a joint letter—the parties may note any discrepancies—setting out in detail their proposed course of action going forward, including whether a trial is necessary to decide the issues of willfulness and damages. To the extent the case cannot be resolved through settlement, the letter should include a proposed briefing schedule for pretrial submissions regarding willfulness and damages.

SO ORDERED:

/s/
PAMELA K. CHEN
United States District Judge

Dated: October 28, 2013
       Brooklyn, New York